## ST. LOUIS & S. F. R. CO. v. SANFORD.

No. 5530. Opinion Filed November 2, 1915.

Rehearing Denied December 21, 1915.

(153 Pac. 650.)

CARRIERS—Injury to Passenger—Company Operating Another Road—Liability. One railroad company does not become liable for the negligence of another merely by reason of being a stockholder in the corporation guilty of the negligent act, but where one company actually controls another, and operates its line of road as a single system, and sells tickets at the stations of the subordinate line over its system, the dominant company will be liable for injuries suffered by a passenger due to the negligence of the subordinate, although the subordinate company keeps up its corporate organization.

(Syllabus by Devereux, C.)

*Error from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

Action by Eliza J. Sanford against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The appeal in this case is taken from a judgment rendered in favor of the plaintiff by the district court of Oklahoma county in the sum of $1,500. The petition, in substance, alleges as follows: That the defendant is a corporation, organized and existing under the laws of Missouri, with a line of railroad extending from the city of Vernon, in the State of Texas, to the city of Hobart, in the State of Oklahoma. The plaintiff, on the 29th day of October, 1911, was the owner and holder of a certain ticket entitling her to passage on any of defendant's trains between the points named above. That she went to defendant's depot at Vernon for the purpose of boarding the passenger train due to leave at 5 o'clock a. m., going to Hobart. That said depot faced the north. That between said depot and the track where the trains stopped to receive and discharge passengers there was a brick platform about 15 feet wide, extending some distance both east and west of said depot. That immediately west of the depot, extending about 30 feet along and adjoining the brick platform, was a wooden platform, elevated about four feet above said brick walk. That said brick walk extended about 40 feet farther west than the said wooden platform. That at the northwest corner of said elevated wooden platform were two barrels containing water; one of said barrels was next to the brick walk and buried about on a level with said brick walk. That the train arrived about 5 o'clock a. m., and, while waiting to receive passengers, stood facing east. That in reaching the coach provided for female white passengers she was compelled to walk to the west along said brick platform

past the place where said barrels were located. That while walking along said brick platform, without any knowledge or information as to the location of said barrels, and without any negligence on her part, and through the failure of the defendant to properly light its platform, she stepped her left foot off said walk into said barrel, as a result of which she sustained injuries complained of, wherefore she prays damages in the sum of $2,999.

. The defendant filed its answer, consisting of a general denial, a plea specifically denying that it was negligent, and alleging that if the plaintiff sustained any injuries, they were directly and proximately caused by her own negligence and want of care, and a further plea setting up the defense of contributory negligence.

The plaintiff introduced evidence tending to support the allegations of the petition, and the defendant, among other things, introduced evidence tending to show that Vernon, Tex., where the injury is alleged to have occurred, as set out in the petition, was on the line of the St. Louis, San Francisco & Texas Railway Company, a separate and distinct corporation from the plaintiff in error. The charter of that corporation was introduced in evidence, showing that it was a Texas corporation and empowered to build and operate a railroad from Denison, Tex., to a point on the bank of Red River, about ten miles in length. This charter was afterwards amended so as to extend the road to Sherman, Tex., making it about twenty miles in length. There were other amendments, but they are not material to the question under consideration. There was evidence that the Texas corporation had a secretary and treasurer, who was not an em-

ployee of the plaintiff in error, and had no connection with it, and there was evidence that the same train crew operated trains from Hobart, Okla., over the road of the plaintiff in error to the Red river, and thence over the road of the Texas company to Vernon, Tex., and that they were paid in proportion to the mileage by the Texas corporation and the plaintiff in error. The defendant in error introduced the annual report of the plaintiff in error to the Corporation Commission of Oklahoma, which shows that for the fiscal year beginning July 1, 1911, and ending June 30, 1912, the plaintiff in error had the control of the St. Louis, San Francisco & Texas Railway Company, and that it owned its entire stock, and that its bonds were deposited by the plaintiff in error to secure a loan of its own. On the cross-examination of Mr. Mayer, auditor in charge of the Division of Statistics and Accounts of the Corporation Commission of Oklahoma, he testified:

"Q. Now then, they informed you, at that time, that there was a division of expenses between the St. Louis & San Francisco Railroad Company, and the St. Louis & San Francisco Railway Company of Texas? A. Well, they did not inform me of that, but as a matter of fact, they do split the expenses at the state line, as a matter of accounting. Q. And all expenses incurred south of the state line is paid by the Texas corporation, the St. Louis, San Francisco & Texas Railway Company? A. I don't know about that. The only reason they are split that I know of is for the benefit of the railroad company and the Corporation Commission of Oklahoma. * * * Q. You understand, then, Mr. Mayer, that train crews running and operating trains across the Texas line, into the State of Texas, across the Texas line, that there is a division of expenses at the state line? A. So far as I know, the only division that is made is in accordance with the

railroad commission law of Oklahoma, which requires a division at the state line, for the purpose of ascertaining cost of railroad transportation, to be used for rate making purposes."

The defendant in error also introduced an official publication called a "folder," which read in part:

"St. Louis & San Francisco Railroad Company, W. B. Biddle, Vice President, Traffic, Frisco Building, St. Louis, Mo."

Also:

"St. Louis, San Francisco & Texas Railway Company; Fort Worth & Rio Grande Railway Co.; Paris & Great Northern R. R. Co., W. B. Biddle, Vice President."

This folder also contained a time-table from Enid, Okla., to Vernon, Tex., and also a direction to ticket agents that but one coupon is required on tickets from junction points to all points on the St. Louis, San Francisco & Texas Railway Company, which should read "Frisco Lines." In this folder was a map headed "Frisco Lines," which indicated the line from Enid, Okla., to Vernon, Tex., as a portion of the lines of the plaintiff in error. The defendant in error testified that from Vernon, Tex., to Hobart, she had a ticket over the railroad of the plaintiff in error.

At the close of the evidence, the defendant below asked the court to direct a verdict in its favor, which was refused, and this is the only error assigned and argued in the brief. There was a verdict for the plaintiff, and the defendant below brings the case to this court by petition in error and case-made.

*W. F. Evans, R. A. Kleinschmidt,* and *Fred E. Suits,* for plaintiff in error.

*Thomas W. Conner,* for defendant in error.

Opinion by DEVEREUX, C. (after stating the facts as above). There is no question raised in the brief as to the admissibility of the evidence or the charge of the trial court, the only question argued being the refusal of the court to direct a verdict in favor of the defendant, on the ground that under the facts above set out it was not liable, and that the suit should have been brought against the St. Louis, San Francisco & Texas Railway Company. This raises the question as to the liability of the railroad company which is operating the road of another corporation to one who assumes the relations of a passenger to it. In our opinion the evidence was sufficient to go to the jury on the question whether the plaintiff in error was operating this road. In *Lehigh Valley Railway Co. v. Dupon,* 128 Fed. 840, 64 C. C. A. 478, which was decided by Circuit Judges Wallace, Lacombe, and Townsend of the Circuit Court of Appeals of the Second Circuit, the facts were somewhat like those in the case at bar. In that case it is said:

"But the law does not prevent one railroad corporation from making a contract with a passenger to carry him beyond its own road and upon or over the connecting roads of another railroad corporation, and assume towards him all the ordinary obligations of a passenger carrier during the transit. The contract, being incidental to one to carry him over its own road, is not *ultra vires.* Nor is it *ultra vires* for a railroad corporation to agree with other railroad corporations upon such terms of cooperation in transacting their joint business as may be satisfactory. And where the lines of several railroad corporations are conducted as a single system for the purposes of the traffic between different points originating upon either, the corporations may constitute them-

selves a partnership for the business of such traffic; and when they do, although the general management of each road is retained by the corporation owning it, the several corporations are, as to such business, partners, and liable upon the principles of the law of agency. When a relation of joint and several agency exists in a system of dominant and subordinate carriers, the dominant carrier is liable for all breaches of obligation by any of the other constituent carriers in the performance of a contract made by it for the transportation of passengers or freight. These propositions are established by the following authorities: *Swift v. Pacific Mail Steamship Co.*, 106 N. Y. 206 [12 N. E. 583]; *Philadelphia, etc., R. Co. v. State*, 58 Md. 372; *Wyman v. Chicago, etc., R. Co.*, 4 Mo. App. 578; *Bradford v. So. Carolina R. Co.*, 7 Rich. (S. C.) 201 [62 Am. Dec. 411]; *Harris v. Cheshire R. Co.* (R. I.) 16 Atl. 512; *Block v. Fitchburg R. Co.*, 139 Mass. 308 [1 N. E. 348]; *Independence Mills Co. v. Burlington, etc., R. Co.*, 72 Iowa, 535 [34 N. W. 320, 2 Am. St. Rep. 258]; *Cincinnati R. Co. v. Spratt*, 2 Duv. [Ky.] 4; *Barter v. Wheeler*, 49 N. H. 9 [6 Am. Rep. 434]. We find nothing inconsistent with these propositions decided in *Pennsylvania R. Co. v. Jones*, 155 U. S. 333 [15 Sup. Ct. 136, 39 L. Ed. 176]."

And the same principle is laid down in *Lehigh Valley R. Co. v. Delachesa*, 145 Fed. 617, 76 C. C. A. 307. In 33 Cyc. 697, it is said:

"One railroad company does not become liable for the acts of the servants of another merely by reason of being a stockholder in that company, or a guarantor of its bonds, as such facts do not of themselves constitute either a partnership or make one company the servant or agent of the other; but where one company actually controls others through the ownership of their stock and operates all of the lines as a single system, although the general management of each road is retained by the company owning it, the dominant company will be liable

for injuries due to the negligence of one of the subordinate companies."

Apply this principle to the case at bar. There was evidence to go to the jury tending to show that the defendant in error purchased a ticket from the plaintiff in error, and that trains were operated from Vernon, Tex., to Enid, Okla., by the same crew, and as a part of the same division; also that payment of the crew by the different roads was merely done for convenience, in pursuance of the railroad commission laws of Oklahoma and Texas, for the purpose of ascertaining the cost of railroad transportation to be used as a basis for rate-making purposes.

The plaintiff in error cites and relies with great confidence upon the case of *Peterson v. Chicago, etc., Co.,* 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed. 841, but the facts in that case are entirely different from those in the case at bar. The only question presented there was in regard to the service of summons, and not whether the defendant road was liable for the negligence of one of its subordinates. It is said in 205 U. S. at page 390, 27 Sup. Ct. 522, 51 L. Ed. 841:

"It is settled by the decisions of this court that foreign corporations can be served with process within the state only when doing business therein, and such service must be upon an agent who represents the corporation in its business."

The real point of the decision is that service on the agent of a subordinate company is not service on the dominant company. And see this case distinguished in *Wichita Falls & N. W. R. Co. v. Puckett,* 53 Okla. 463, 157 Pac. 112.

The plaintiff in error also cites and relies upon *St. L. & S. F. R. Co. v. Beach*, 26 Okla. 155, 108 Pac. 1098, but that case is not at all in point. The question presented there was whether hearsay evidence was competent to prove that one road was operating the other. The court say:

"It is contended by counsel for plaintiff in error that the attempt of the plaintiff to show such connection or relation between the Ft. Worth & Rio Grande Railway Company, the initial carrier, and the St. Louis & San Francisco Railroad Company, the defendant in this case, as to make the defendant liable, was wholly unsuccessful; that the evidence offered was largely hearsay and entirely insufficient to fasten any liability upon the defendant company. This contention is well taken. Most of the evidence introduced over objections of counsel was hearsay, and all of it was incompetent for the purpose for which it was offered. On this ground alone the judgment must be reversed."

In the case at bar the evidence to show the liability of the plaintiff in error was entirely different from that offered in the Beach Case, and while objection was made to it, yet the objection is not urged in this court. The Beach Case does not decide that where one railroad company sells a ticket to a passenger to transport him over a subsidiary line in which it owns all of the stock, and the train crew running over the short subsidiary line to a division point on the main line, the payment being made by the separate corporation only for the purpose of accounting, would not be liable to such passenger for negligence. *Pennsylvania R. Co. v. Jones*, 155 U. S. 333, 15 Sup. Ct. 136, 39 L. Ed. 348, is also cited and relied upon by the plaintiff in error. This case is distinguished in the Lehigh Valley R. Co. Case, *supra,* and an examina-

7—54

tion will show that the facts are entirely different from the case at bar. In that case some of the connecting carriers were held liable on the ground set out in the Lehigh Valley Case, *supra,* but the Pennsylvania Company was held not liable, because the facts showed that it had assumed no liability to the defendant, Jones.

We do not decide that the mere fact that one corporation owns a majority, or all, of the stock of another renders it liable for the torts of the subordinate corporation, but we do hold that in this case the evidence above set out was sufficient to take the case to the jury on the question as to who was operating the St. Louis, San Francisco & Texas Railway Company. There is no complaint made in the brief as to the charge of the court on this point.

We therefore recommend that the judgment below be affirmed.

By the Court: It is so ordered.